[Civ. No. 18887.   Second Dist., Div. Two.   July 21, 1952.]

## PAUL P. M. DUBOSCLARD, Respondent, v. OLGA V. DUBOSCLARD, Appellant.

A. Brigham Rose for Appellant.

Manley C. Davidson for Respondent.

McCOMB, J.—Defendant appeals from an interlocutory decree of divorce granted plaintiff upon the ground of cruelty.

Defendant in her opening brief states: "At the time of trial Appellant, whose original counsel had departed this planetary hunk of matter known as the Earth, elected to represent herself." This statement, although literally accurate, is misleading. The record discloses that on April 5, 1950, Willis Sargent and Sidney H. Wyse were substituted as attorneys in the place and stead of Werner O. Graf, defendant's deceased attorney. They continued as such until February 20, 1951. The record also discloses that thereafter the firm of Hahn, Ross, Goldstone and Saunders appeared as attorneys for defendant and remained as such until they

were substituted out of the case on April 9, 1951. It is therefore apparent that plaintiff had available the advice of competent counsel. The fact she chose to represent herself at the time of trial has no bearing upon defendant's contention that there is no substantial evidence to sustain the trial court's finding: ''That since said marriage, and also since the filing of the original complaint herein, the defendant has been guilty of extreme mental cruelty towards the plaintiff in that defendant has treated plaintiff in a cruel and inhuman manner and inflicted upon him grievous mental suffering, and that by reason thereof plaintiff has suffered extreme mental anguish and his health has been impaired.''

When a finding is attacked on the ground there is not any substantial evidence to support it the power of an appellate court *begins and ends* with a determination as to whether there is any substantial evidence to sustain it. (*Estate of Bristol,* 23 Cal.2d 221, 223 [2] [143 P.2d 689].)

Viewing the record pursuant to the foregoing rule it discloses the questioned findings are amply supported by the following evidence which was fully corroborated by two witnesses who heard defendant reproach her husband with vile and indecent accusations none of which was proved to be true. Plaintiff testified:

### 1.

''One day I got a phone call from the Police Department saying: 'We have got something here that belongs to you—your wife. She jumped in the lake.' So I went to the Police Station and she insisted that she tripped and fell in the lake. Then, after that she said: 'Well, you told me to go jump in the lake, so I did.' The effect of this was that I didn't know what her next move was going to be. She tried suicide all the time, and I understand from her that she used to do that as a young child to bother her mother.''

### 2.

''Well, there was another scene in public. I was at a restaurant and she made a remark that I couldn't tie a tie. My son was present, and I said, 'Any more remarks like this and I will have to leave the table.' She repeated it and I left the table. She rolled on the floor and screamed and I kept going.''

### 3.

''Then one day she came in and said, 'You think you are an artist. You don't do anything right. First you

have supported me, but I hate the idea of your being tooth-less and hairless. I don't want to live with you any more. I want to get a divorce. I met _____.' She told me that before, she had met a nice gentleman in Buffalo who was very sorry that she was not free and she intended to go back to Buffalo and marry the gentleman, so she wanted to get a divorce.

"I, knowing that she was not always sure of herself, said, 'Well, if you ask again, we will do it. In the meantime, sleep over that question.'

"And she came back and said she wanted a divorce. Thirty years with a bum was enough."

### 4.

"The effect, as I said before, was to make me jittery, jumpy and inattentive in my work. I have always tried to be at peace with the world, and if I got somebody who was disagreeing with everything—black is black—I told my wife—she said, 'I want to go to France . . .' "

"THE COURT: The question was what effect did her conduct have on you?

"THE WITNESS: The effect was disturbing loss of sleep, keeping mulling ideas in my head for hours at night.

"Q. BY MR. DAVIDSON: Did it affect your appetite in any way? A. It did. I was eating cotton. I didn't know what I was eating.

"Q. Did you lose any weight as a result of this? A. I lost some weight in 1949, quite a bit of it; about fifteen pounds."

The foregoing is a fair sample of the testimony received at the trial and clearly supports the trial judge's findings.

Affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied August 20, 1952, and appellant's petition for a hearing by the Supreme Court was denied September 18, 1952.